UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORCAST S.AR.L., | |
| Plaintiff, | Case No. 12 Civ. 4973 (PAC) |
| -against- | |
| CASTLE HARLAN, INC. | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION TO REMAND**

CHADBOURNE & PARKE LLP
Attorneys for Plaintiff
30 Rockefeller Plaza
New York, NY 10112
(212) 408-5100

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

PROCEDURAL HISTORY..............................................................................2

STATEMENT OF FACTS ...............................................................................3

    A.    Castle Harlan Deceived Norcast Regarding Bradken's Role in the
          Purchase of NWS ..............................................................................3

    B.    The Agreements at Issue Do Not Provide a Basis for This Dispute
          to be Arbitrated ................................................................................4

          1.    Norcast is Not a Signatory to the Confidentiality Agreement
                  or Otherwise Bound by Its Terms.................................................4

          2.    The Exclusivity Agreement Does Not Incorporate the
                  Arbitration Provision of the Confidentiality Agreement ................6

ARGUMENT ...................................................................................................8

I.    THIS ACTION SHOULD BE REMANDED BECAUSE PLAINTIFF'S
    CLAIMS DO NOT RELATE TO ANY INTERNATIONAL
    ARBITRATION AGREEMENT..................................................................8

    A.    Standard of Review...........................................................................8

    B.    Norcast is Not a Signatory to Any Arbitration Agreement
          with Castle Harlan..........................................................................9

    C.    No Agreement to Arbitrate Has Been Incorporated Into Any
          Agreement Between Norcast and Castle Harlan......................10

    D.    The Doctrine of Estoppel Provides No Basis for Arbitrability.................13

    E.    Norcast is Entitled to an Award of Costs and Attorney's Fees
          for  Wrongful Removal of this Action.....................................16

CONCLUSION...............................................................................................17

## TABLE OF AUTHORITIES

Page(s)

CASES

Aerotech World Trade Ltd. v. Excalibur Sys., Inc.,
   236 A.D.2d 609, 654 N.Y.S.2d 386 (2d Dep't 1997).............................................11

Arabesque v. Capacity LLC,
   No. 07Civ.2042(TPG), 2008 WL 681459 (S.D.N.Y. Mar. 10, 2008) ....................................16

Arthur Anderson LLP v. Carlisle,
   556 U.S. 624 (2009)...........................................................................14

Bishop v. Smith Barney, Inc.,
   No. 97 CIV. 4807(RWS), 1998 WL 50210 (S.D.N.Y. Feb. 6, 1998)...........................11

Borsack v. Chalk & Vermilion Fine Arts Ltd.,
   974 F. Supp. 293 (S.D.N.Y. 1997) .............................................................10

Ellen v. A.C. Schultes of Md., Inc.,
   615 S.E.2d 729 (N.C. Ct. App. 2005) ..........................................................15

Fresh Express, Inc. v. Sardilli Produce & Dairy Co.,
   No. 3:09cv1420 (SRU), 2010 WL 3724543 (D. Conn. Sept. 15, 2010)................................13

G & H Partners AG v. Wextrust Capital, LLC,
   No. 07 Civ. 9803(DLC), 2008 WL 65102 (S.D.N.Y. Jan. 4, 2008) ........................................17

Gen. Ry. Signal Corp. v. L.K. Comstock & Co.,
   254 A.D.2d 759, 678 N.Y.S.2d 208 (4th Dep't 1998).............................................11

GlobalSantaFe Drilling Co. v. Ins. Co. of Pa.,
   No. C 05-4411 CW, 2006 WL 13090 (N.D. Cal. Jan. 3, 2006)...................................8

Haskins v. First Am. Title Ins. Co.,
   Civ. No. 10-5044 (RMB/JS), 2012 WL 1599998 (D.N.J. May 4, 2012)................................15

Indus. Window Corp. v. Fed. Ins. Co.,
   609 F.Supp. 2d 329 (S.D.N.Y. 2009)..........................................................11

International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,
   206 F.3d 411 (4th Cir. 2000) ...........................................................14, 15

Life Technologies Corp. v. AB Sciex Pte. Ltd.,
   803 F.Supp. 2d 270 (S.D.N.Y. 2011)..........................................................15

Limonium Maritime S.A. v. Mizushima Marinera, S.A.,
   96 CIV. 1888 DC, 1999 WL 46721 (S.D.N.Y. Jan. 28, 1999) ................................................12

Lowry & Co. v. S.S. Le Moyne D'Iberville,
   235 F. Supp. 396 (S.D.N.Y. 1966) ........................................................................................10

MAG Portfolio Consult., GMBH v. Merlin Biomed Grp. LLC,
   268 F.3d 58 (2d Cir. 2001)....................................................................................................13

Martin v. Franklin Capital Corp.,
   546 U.S. 132 (2005)...............................................................................................................16

Morgan Guar. Trust Co. v. Republic of Palau,
   971 F.2d 917 (2d Cir. 1992).............................................................................................16, 17

Noble Drilling Servs. Inc. v. Certex USA, Inc.,
   620 F.3d 469 (5th Cir. 2010) ................................................................................................15

Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela,
   991 F.2d 42 (2d Cir. 1993)......................................................................................................8

Providence Inv. Mgmt. Co. v. Steel,
   No. 113142/2007, 2008 N.Y. Misc. LEXIS 7558 (N.Y. Co. Jan. 14, 2008) ........................13

Qpro Inc. v. RTD Quality Servs. USA, Inc.,
   761 F. Supp. 2d 492 (S.D. Tex. 2011) ....................................................................................8

Ritacco v. Whole Life, Inc.,
   Civil Action No. 3:09-cv-792 (VLB), 2012 WL 3021529 (D. Conn. July 29, 2010) ............17

Rosen v. Megal Bloks Inc.,
   06 Civ. 3474(LTS)(GWG), 2007 WL 1958968 (S.D.N.Y. July 6, 2007) .............................13

Sarhank Grp. v. Oracle Corp.,
   404 F.3d 657 (2d Cir. 2005).....................................................................................................8

Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.,
   283 F. Supp. 2d 602 (D. Conn. 2003)....................................................................................11

Tellium, Inc. v. Corning Inc.,
   No. 03 Civ. 8487(NRB), 2004 WL 307238 (S.D.N.Y. Feb. 13, 2004) ...................................8

Thomson-CSF, S.A. v. Am. Arbitration Assoc.,
   64 F.3d 773 (2d Cir. 1995)................................................................................................9, 16

U.S. Steel Corp. v. Turner Constr. Co.,
   560 F. Supp. 871 (S.D.N.Y. 1983) ........................................................................................12

**STATUTES**

9 U.S.C. § 205 .................................................................................................................2

28 U.S.C. § 1447(c) ...............................................................................................8, 16, 17

## PRELIMINARY STATEMENT

This Court does not have subject matter jurisdiction over this dispute.  Defendant Castle

Harlan, Inc.'s ("Castle Harlan") removal of this action and its motion to dismiss the complaint

rest on a fundamentally flawed premise -- that this dispute is somehow governed by an

agreement to arbitrate.  However, contrary to the suggestion peppered throughout the Motion to

Dismiss, the plaintiff, Norcast S.àr.l. ("Norcast"), never agreed to arbitrate any dispute

whatsoever with Castle Harlan.  Rather, Castle Harlan points to a confidentiality agreement

dated March 15, 2011 that it entered into with non-party Norcast Wear Solutions, Inc. ("NWS")

(the "Confidentiality Agreement") and claims that the Complaint alleges a breach of that

agreement.  Castle Harlan argues that Norcast, having asserted a claim for breach of the

Confidentiality Agreement, must be bound by the arbitration agreement contained therein.  But

the Complaint asserts no such claim.  In fact, the Complaint expressly disclaims any breach of

the Confidentiality Agreement by Castle Harlan, instead pointing to Castle Harlan's *compliance*

with the Confidentiality Agreement to show that Castle Harlan viewed Bradken as a source of

financing for the transaction at issue while falsely representing to Norcast that no such external

financing was in place.

Castle Harlan's "incorporation by reference" theory fares no better.  Castle Harlan points

to an exclusivity agreement, dated June 1, 2011, between it and Norcast (the "Exclusivity

Agreement") which it contends incorporates the arbitration clause contained in the

Confidentiality Agreement.  However, the Exclusivity Agreement says nothing of the sort and

New York law, which governs the issue, provides that an agreement to arbitrate is incorporated

by reference into a separate agreement only if there was an explicit commitment to do so; mere

implication does not suffice.  The Exclusivity Agreement plainly contains no explicit

commitment to incorporate the Confidentiality Agreement.

Finally, Castle Harlan's effort to invoke an estoppel theory to compel arbitration fails.  In order to compel Norcast, non-signatory to an arbitration agreement, to arbitrate, Castle Harlan must demonstrate that Norcast invokes a "direct legal benefit" under the agreement containing the arbitration clause.  Direct legal benefit has been held to include accepting payments under the agreement or exercising a legal privilege granted by the agreement.  Castle Harlan does not allege that Norcast received any such direct benefit here.

For these reasons, there is no basis upon which this dispute can be found to be arbitrable.  Accordingly, there is no basis for subject matter jurisdiction and the case should be remanded to New York state court.

## PROCEDURAL HISTORY

On June 4, 2012, Norcast commenced this action against Castle Harlan in New York Supreme Court, asserting claims for fraud, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.[1]  D.E. #1 Ex. A ("Compl.") p. 16.  On June 25, 2012, Castle Harlan removed the action to this Court pursuant to 9 U.S.C. § 205, on the grounds that a Confidentiality Agreement between Castle Harlan and NWS purportedly requires arbitration of all claims.  D.E. # 1 ("Notice of Removal") ¶¶ 1-4.

On July 11, 2012, this Court entered an Order allowing the parties to file cross-motions

---

[1]   On May 10, 2012, Norcast commenced a lawsuit in the Federal Court of Australia against Bradken, Bradken's chairman Nicholas Greiner, and Bradken's director Brian Hodges, asserting claims for bid-rigging and of misleading and deceptive conduct arising from Bradken's purchase of NWS.  Compl. Ex. B.  This Court had granted Norcast's Application for an Order of Judicial Assistance, directing Castle Harlan to produce documents relevant to the Australian proceedings, on November 17, 2011.  In re Norcast S.AR.L., 11 Misc. 0251, D.E. # 19 (S.D.N.Y. 2011).

2

for remand and to dismiss and compel arbitration.  D.E. # 7 ("July 11 Order").

## STATEMENT OF FACTS

A.    **Castle Harlan Deceived Norcast Regarding Bradken's Role in the
        Purchase of NWS**

The allegations of the Complaint arise from Norcast's sale of NWS to Castle Harlan for $190 million and its virtually immediate resale to Bradken for $215 million.  Compl.  ¶¶ 1, 32. When Bradken became aware that NWS was for sale, Castle Harlan and Bradken agreed that Castle Harlan would serve as Bradken's "stalking horse" bidder, acquiring NWS on Bradken's behalf but concealing Bradken's role in the transaction.  Id. ¶¶ 2, 15.  The goal of this scheme was to artificially depress the sale price of NWS by deceiving Norcast regarding the identity of the ultimate buyer.  Id. ¶ 15.

Bradken, a competitor of NWS that stood to realize unique synergies from the acquisition of NWS, would have been expected to pay more for NWS than a purely financial acquiror such as Castle Harlan.  Id. ¶ 38.  Accordingly, Bradken paid Castle Harlan a fee of $25 million for its services in concealing Bradken's role.  Id. ¶ 40.  Castle Harlan's receipt of a $25 million fee, without assuming any financial risk and while owning NWS for a matter of mere hours, is inexplicable unless both Castle Harlan and Bradken knew that Bradken's identity as the real purchaser was a material fact that could be expected to affect the sale price by more than $25 million.  Id.

At each and every step in the negotiation of the sale of NWS, Norcast believed it was dealing with Castle Harlan; but behind the scenes, Bradken was dictating virtually every aspect of Castle Harlan's negotiating position.  Id. ¶ 34.  It is apparent from the timing and nature of the resale of NWS to Bradken that Castle Harlan sought and obtained Bradken's approval at every turn in the negotiations.  Id.  Norcast was unaware that Castle Harlan's negotiating position was

being dictated by an undisclosed party.  Id.

In sum, Castle Harlan did not disclose to Norcast that it was acting on behalf of anyone in its acquisition of NWS, and there was certainly no disclosure by Castle Harlan that it had a pre-existing contract, arrangement, or understanding with Bradken, that Bradken would not bid to acquire NWS from Norcast because Castle Harlan would re-sell NWS to Bradken at a higher price immediately following Castle Harlan's acquisition of NWS.  Id. ¶ 35.  Moreover, Castle Harlan falsely denied that there were any external "sources of financing" for the transaction, thus actively concealing Bradken's role.  Id. ¶¶ 29, 30.

**B.      The Agreements at Issue Do Not Provide a Basis for This Dispute to be Arbitrated**

**1.      Norcast is Not a Signatory to the Confidentiality Agreement or Otherwise Bound by Its Terms**

Castle Harlan's sole ground for removal is the existence of an arbitration clause in the Confidentiality Agreement between Castle Harlan and NWS (see Notice of Removal ¶¶ 2, 4), which Norcast never signed (see D.E. # 1 Ex. C ("Confidentiality Agreement")) and which is referenced only twice in Norcast's sixty-paragraph Complaint (Compl. ¶¶ 26, 33).  Though Castle Harlan claims in its Notice of Removal that Norcast has "invoked alleged benefits of the Confidentiality Agreement" (Notice of Removal ¶ 8), Norcast has done no such thing, as a review of the allegations in the Complaint makes clear.

The Complaint does not allege any breach of the Confidentiality Agreement, and indeed, it expressly renounces any such claim.  Compl. ¶ 33.  The Complaint observes that disclosures of confidential information to Bradken were permissible under the Confidentiality Agreement only if Bradken was a source of financing for the transaction, but it does so for precisely the opposite reason Castle Harlan suggests.  See id.

In particular, Norcast references the Confidentiality Agreement in its Complaint only

4

insofar as it shows the knowing falsity of Castle Harlan's denial that there were any external

sources of financing for the transaction.  On the one hand, Castle Harlan denied that there were

any external sources of financing for the transaction (id. ¶ 29), while on the other hand, it

disclosed confidential information to Bradken, which was permissible only if Bradken was in

fact a source of financing (id. ¶ 33).  The Complaint alleges that Castle Harlan's denial that there

were sources of financing was false, *e.g.* that Bradken was a source of financing, *entitled to*

*receive* confidential information under the Confidentiality Agreement.  Id.

Apparently recognizing that the allegations in the Complaint, honestly read, do not

support a finding of arbitrability under governing law, Castle Harlan resorts to flatly

misrepresenting those allegations.  Castle Harlan suggests that Norcast has made a "claim that

Castle Harlan should be liable to Norcast because its actions were 'fundamentally irreconcilable

with Castle Harlan's obligations under the Confidentiality Agreement.'"  Memorandum of Law

in Support of Defendant's Motion to Dismiss And/Or Stay this Action in Favor of International

Arbitration, dated July 18, 2012 ("Castle Harlan Br."), at 2.  This assertion is based on the

following, carefully elided quote from the Complaint:

> Castle Harlan's disclosures of confidential information to Bradken . . . are
> fundamentally irreconcilable with Castle Harlan's obligations under the
> Confidentiality Agreement.

Castle Harlan Br., at 18.

What the Complaint actually says is quite different when shorn of deceptive

ellipses:

> Castle Harlan's disclosures of confidential information to Bradken, **coupled with**
> **Castle Harlan's denial that there were any external sources of financing,** are
> fundamentally irreconcilable with Castle Harlan's obligations under the
> Confidentiality Agreement.

Compl. ¶ 33 (emphasis added).

When quoted in full, the Complaint alleges nothing more than that Castle Harlan's statements to Norcast (which the Complaint alleges are false and actionably fraudulent) are inconsistent with the nature of Castle Harlan's confidentiality obligations, tending to show, not that Castle Harlan breached any such obligations, but that Castle Harlan lied to Norcast.  In order to allege that the Confidentiality Agreement had been breached, Norcast would have had to allege that Bradken was *not* a source of financing; but if that were the case, then Castle Harlan's denial that there were any sources of financing would have been true, whereas the Complaint alleges that Castle Harlan's denial was actionably false.  Making perfectly clear that Norcast alleges that the denial was false rather than that the Confidentiality Agreement was breached, Norcast expressly states in its Complaint that it "does not, however, assert a claim in this proceeding for damages stemming from Castle Harlan's confidentiality obligations."  Id.

Norcast, in any event, would not have been injured had Castle Harlan breached the Confidentiality Agreement by making disclosures to Bradken; the only injury could have been suffered by NWS, which is now wholly-owned by Bradken (after being briefly owned by Castle Harlan itself) and which therefore would have no reason to dispute any issue under the Confidentiality Agreement with Castle Harlan.  The notion that this case arises from a dispute over violations of the Confidentiality Agreement is pure fiction because no such violations are alleged, and if they ever were, such a claim would need to be brought by a Bradken subsidiary.

### 2. The Exclusivity Agreement Does Not Incorporate the Arbitration Provision of the Confidentiality Agreement

Castle Harlan also argues that Norcast was somehow made a party to the Confidentiality Agreement between NWS and Castle Harlan, because it is a party to the Exclusivity Agreement.  Castle Harlan Br., at 13-16.  However, the Exclusivity Agreement does not incorporate the arbitration clause contained in the Confidentiality Agreement and Norcast makes no claim that

the Exclusivity Agreement was violated in any respect.

The purpose and effect of the Exclusivity Agreement was to provide a period during which Norcast and Castle Harlan would negotiate the final terms of the transaction, without Norcast entertaining additional or competing bids for NWS.  D.E. # 11 Ex. B ("Exclusivity Agreement"), at 1.  Neither Norcast nor Castle Harlan allege that these exclusivity provisions were breached, and no claim or defense in this action is predicated on them.

The Exclusivity Agreement does, indeed, contain a limited amendment to the definition of the term "Representative" as used in the Confidentiality Agreement.  Id. at 2.  But the language of the provision at issue makes it clear that Norcast is not a party to the Confidentiality Agreement, nor to the clause amending it.  The paragraph states, "***the Company [NWS] and Castle Harlan*** hereby agree that the Confidentiality Agreement is hereby amended…."  Id.  Pointedly, unlike the rest of the agreement, this clause pertains only to Castle Harlan and NWS.  Id.

Moreover, the Exclusivity Agreement nowhere includes language stating that the terms of the Confidentiality Agreement are incorporated into the Exclusivity Agreement, or that they are made generally applicable to Norcast.  While the Exclusivity Letter states that it must be treated as confidential information by all parties thereto (id.), nothing about Norcast's claims relates, even tangentially, to the disclosure, proper or otherwise, of the Exclusivity Agreement.  And the Exclusivity Agreement, which states that it is governed by New York law (id.), includes no arbitration clause whatsoever and does not state that the arbitration provisions of the Confidentiality Agreement are applicable to the Exclusivity Agreement.

**ARGUMENT**

**I.**

**THIS ACTION SHOULD BE REMANDED BECAUSE PLAINTIFF'S CLAIMS DO NOT RELATE TO ANY INTERNATIONAL ARBITRATION AGREEMENT**

**A.      Standard of Review**

Pursuant to 28 U.S.C. § 1447(c), remand is appropriate if this Court determines that Norcast's claims are not arbitrable.[2]  See Qpro Inc. v. RTD Quality Servs. USA, Inc., 761 F. Supp. 2d 492, 504 (S.D. Tex. 2011) (holding that "when arbitrability is the basis for jurisdiction and can no longer be asserted as a defense, the case should be remanded for resolution of the state law claims"); GlobalSantaFe Drilling Co. v. Ins. Co. of Pa., No. C 05-4411 CW, 2006 WL 13090, at *6-8 (N.D. Cal. Jan. 3, 2006) (holding that remand is appropriate where the parties have not agreed to arbitrate the claims at issue).

Where, as here, the parties have not "clear[ly] and unmistak[ably]" agreed to the contrary, "whether a party has consented to arbitrate is an issue to be decided by the Court…." Sarhank Grp. v. Oracle Corp., 404 F.3d 657, 661-62 (2d Cir. 2005).  The burden of showing arbitrability rests firmly with the party seeking to compel arbitration.  Tellium, Inc. v. Corning Inc., No. 03 Civ. 8487(NRB), 2004 WL 307238, at *5 (S.D.N.Y. Feb. 13, 2004) (citing Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela, 991 F.2d 42, 46 (2d Cir. 1993)).

---

[2]   Indeed, Castle Harlan has conceded as much.  See Defendant's July 9, 2012 Letter to the Court, at 2 (stating that this action "will likely be remanded" if it is found not to be arbitrable).

8

**B.     Norcast is Not a Signatory to Any Arbitration Agreement with
        Castle Harlan**

Castle Harlan's attempts to compel Norcast to arbitrate its claims, and to predicate federal

subject matter jurisdiction on the notion that this dispute is arbitrable, fail because Norcast never

agreed to arbitrate the disputes at issue here.[3]  Arbitration is a creature of contract, and a party

may not be required to arbitrate claims unless that party has agreed to do so.  See Thomson-CSF,

S.A. v. Am. Arbitration Assoc., 64 F.3d 773, 776 (2d Cir. 1995) (holding that "a party cannot be

required to submit to arbitration any dispute which he has not agreed to submit").

Here, Castle Harlan's claims of arbitrability rest on the arbitration clause in the

Confidentiality Agreement, but it is undisputed that Norcast never signed the Confidentiality

Agreement.  See Castle Harlan Br., at 13.  Thus, unless Castle Harlan can make "a *full* showing

of some accepted theory under agency or contract law," demonstrating Norcast's agreement to

arbitrate the disputes at issue here, there is no valid basis upon which to compel arbitration.

Thomson-CSF, 64 F.3d at 780 (emphasis in original).  Because Second Circuit precedent

narrowly circumscribes the circumstances under which a non-signatory to an arbitration

agreement may be compelled to arbitrate, Castle Harlan's extensive recitation of authority noting

the existence, in general, of a federal policy favoring arbitration (Castle Harlan Br., at 11-13) is

pure makeweight.  Thomson-CSF, 64 F.3d at 776 (noting that while there is a federal policy

---

[3]   Castle Harlan's suggestion that "to the extent" Norcast alleges a breach of the Share Purchase
      Agreement, such a claim would be arbitrable (Castle Harlan Br., at 20 n. 15), is beside the
      point because the Complaint alleges no breach of the Share Purchase Agreement, nor could it
      because, as Castle Harlan notes, it is not a party to the Share Purchase Agreement.

favoring arbitration agreements, "such agreements must not be so broadly construed as to encompass claims and parties that were not intended by the original contract").

**C.**     **No Agreement to Arbitrate Has Been Incorporated Into Any Agreement Between Norcast and Castle Harlan**

Castle Harlan cannot show that any agreement to arbitrate this dispute was incorporated into any contract between Castle Harlan and Norcast.  To the contrary, the Exclusivity Agreement, the sole basis for any suggestion of "incorporation," pointedly omits any arbitration clause, contains no language incorporating the terms of the Confidentiality Agreement, and expressly amends the Confidentiality Agreement only on behalf of NWS and Castle Harlan, not Norcast, which is not and never was a party to the Confidentiality Agreement.[4]  See Exclusivity Agreement, at 2.  The Exclusivity Agreement fails to meet the demanding standard for incorporation of an arbitration clause contained in a separate contract not signed by the party to be compelled to arbitrate.  See, e.g., Lowry & Co. v. S.S. Le Moyne D'Iberville, 235 F. Supp. 396, 398-99 (S.D.N.Y. 1966) (finding incorporation of charter party where bills of lading explicitly stated "all conditions and exceptions as per charter party dated Paris 17th September 1963").

At the threshold, because the Exclusivity Agreement contains a New York choice of law clause (Exclusivity Agreement, at 2), the question of whether the Exclusivity Agreement incorporates the arbitration clause contained in the Confidentiality Agreement presents a

---

[4]     Borsack v. Chalk & Vermilion Fine Arts Ltd., 974 F. Supp. 293 (S.D.N.Y. 1997), upon which Castle Harlan relies, is inapplicable for exactly this reason.  Borsack simply held that when the parties to an agreement containing an arbitration clause amended their agreement, the arbitration clause continued to apply -- as between its signatories -- to the agreement as amended.  Id. at 300.

10

question of New York law.  Bishop v. Smith Barney, Inc., No. 97 CIV. 4807(RWS), 1998 WL

50210, at *5 (S.D.N.Y. Feb. 6, 1998) (looking to principles of New York contract law to

determine whether Employment Arbitration Policy was incorporated into employment contract);

Sec. Ins. Co. of Hartford v. Trustmark Ins. Co., 283 F. Supp. 2d 602, 607-08 (D. Conn. 2003)

aff'd sub nom. Sec. Ins. Co. of Hartford v. TIG Ins. Co., 360 F.3d 322 (2d Cir. 2004) (noting that

"[a]lthough the FAA preempts state arbitration rules, absent the parties' intent to incorporate the

same, state law provides the tools by which the intent of the parties is ascertained," and applying

California law to determine whether the parties agreed to arbitrate the dispute at issue).

    In turn, "[u]nder New York law, while an agreement to arbitrate can be incorporated by

reference, any such reference must clearly show such an intent to arbitrate." Indus. Window

Corp. v. Fed. Ins. Co., 609 F.Supp. 2d 329, 337-38 (S.D.N.Y. 2009) (noting further that where

the subcontract language "makes no reference to the ADR provisions in the prime

contract,…[w]ere this Court to find that such language gives rise to an implied agreement to

arbitrate, it would essentially be enforcing an arbitration agreement that depends solely 'upon

implication or subtlety,' a result that is not permitted under New York law" (internal citations

and quotations omitted)). Gen. Ry. Signal Corp. v. L.K. Comstock & Co. is instructive:  in that

case, a party contended that a subcontract, which made express reference to a primary contract,

incorporated the primary contract's arbitration provisions.  254 A.D.2d 759, 759, 678 N.Y.S.2d

208, 208 (4th Dep't 1998).  The court declined to compel arbitration, holding that because

"[n]owhere in the subcontract is there a clear, explicit and unequivocal agreement to arbitrate . . .

the terms of the subcontract do not meet the rigid standards necessary to establish an explicit

commitment by plaintiff to submit its claims [to arbitration]."  Id. at 760, 678 N.Y.S.2d at 209;

see also Aerotech World Trade Ltd. v. Excalibur Sys., Inc., 236 A.D.2d 609, 611, 654 N.Y.S.2d

11

386, 388 (2d Dep't 1997) (refusing to compel arbitration where "[t]he Management Agreement fails to incorporate, either explicitly or by reference, the provision of the Sales Agreement requiring the parties to submit their disputes to arbitration, nor does the provision relied upon by the Supreme Court evince a clear intent by the parties to do so").

Castle Harlan suggests that Limonium Maritime S.A. v. Mizushima Marinera, S.A. somehow held that it is enough for a second agreement to "reference by name" an agreement containing an arbitration clause in a subsequent contract, but the facts of that case show otherwise. See 96 CIV. 1888 DC, 1999 WL 46721 (S.D.N.Y. Jan. 28, 1999). In Limonium, a guarantor "unconditionally, jointly and severally" guarantied the performance of all of a party's obligations under an agreement containing an arbitration clause. Id. at *6. It therefore -- "jointly and severally" -- stood in the shoes of a party to the agreement. Castle Harlan cites no cases holding that a mere "reference by name" is sufficient to incorporate an arbitration clause against non-parties, because there are no such cases under New York law.

Moreover, New York courts have held that where a contract makes reference only to certain provisions of a separate contract, the provisions not referenced are not incorporated. See U.S. Steel Corp. v. Turner Constr. Co., 560 F. Supp. 871, 874 (S.D.N.Y. 1983) (stating that "[h]ad the parties intended Article II of the subcontract to incorporate *all* of the provisions of the prime contract, as is now asserted by Turner, the express incorporation of Article 6 of the IBM General Conditions would not have been necessary. The express incorporation of this clause and the absence of any similar express provision concerning Article 11, suggests the parties did not intend to incorporate the forum selection clause into the subcontract") (emphasis in original).

These principles of New York law are fatal to Castle Harlan's suggestion that an agreement to arbitrate was incorporated into the Exclusivity Agreement, a contract that contains

no arbitration clause, contains no express language incorporating the terms of the Confidentiality

Agreement, and makes no reference to the arbitration clause contained in the Confidentiality

Agreement (a single definition of which was expressly amended only by two of the parties to the

Exclusivity Agreement, and not by Norcast).[5]

**D.     The Doctrine of Estoppel Provides No Basis for Arbitrability**

Castle Harlan's suggestion that Norcast is somehow estoped from denying that this

dispute is arbitrable fares no better than Castle Harlan's untenable "incorporation" argument.

Where, as here, a signatory to an agreement containing an arbitration clause seeks to compel a

non-signatory to arbitrate claims, the signatory must show that the non-signatory knowingly

accepted direct legal benefits under the agreement containing the arbitration clause.  See MAG

Portfolio Consult., GMBH v. Merlin Biomed Grp. LLC, 268 F.3d 58, 61 (2d Cir. 2001) (noting

that "the benefit derived from an agreement is indirect where the nonsignatory exploits the

contractual relation of parties to an agreement, but does not exploit (and thereby assume) the

agreement itself"); Providence Inv. Mgmt. Co. v. Steel, No. 113142/2007, 2008 N.Y. Misc.

LEXIS 7558, at *10-12 (N.Y. Co. Jan. 14, 2008) (same); see also Fresh Express, Inc. v. Sardilli

Produce & Dairy Co., No. 3:09cv1420 (SRU), 2010 WL 3724543, at *3 (D. Conn. Sept. 15,

---

[5]     In addition, the Exclusivity Agreement defined only a very limited obligation -- the
obligation to treat the Exclusivity Agreement itself as confidential -- by reference to the
Confidentiality Agreement (Exclusivity Agreement, at 2), and this dispute is unrelated to that
narrow obligation.  Castle Harlan cannot show that Norcast's claims revolve around "issues
of contract construction" or the "parties' rights and obligations under" the provision of the
Exclusivity Agreement making its terms confidential; such issues have nothing to do with
this case.  See Rosen v. Megal Bloks Inc., 06 Civ. 3474(LTS)(GWG), 2007 WL 1958968, at
*7, *9 (S.D.N.Y. July 6, 2007) (rejecting claim of arbitrability where the claims before the
Court did not "implicate any issues of construction of the Employment Agreements"
containing the arbitration clause).

13

2010) (benefits "direct" in nature where non-signatory accepted regular payments pursuant to the terms of contract containing arbitration clause).

Here, Norcast has claimed no rights under, alleged no breach of, and claimed no benefits under, the Confidentiality Agreement.  Norcast has merely observed that the nature of Castle Harlan's contractual relationship to NWS under the Confidentiality Agreement is among the background facts tending to show that Castle Harlan consciously deceived Norcast when Castle Harlan denied that there were any sources of financing for the Transaction.  Compl. ¶¶ 29-30, 33)  Norcast's claims do not depend on (and indeed, would be irreconcilable with) any contention that Castle Harlan has breached the Confidentiality Agreement or that Norcast effectively stands in NWS's shoes under the Confidentiality Agreement.

An examination of the cases on which Castle Harlan relies confirms that the "estoppel" theory is not applicable here.  For example, in International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, a non-signatory to the contract containing an arbitration clause sued a signatory under that contract, alleging that it had been breached and seeking money damages and revocation of the contract in accordance with its terms.[6]  206 F.3d 411, 413 (4th Cir. 2000).  It is unsurprising that the International Paper court held that a direct benefit under a contract has been invoked when a party seeks to recover money damages under that contract (id.

---

[6]   International Paper erroneously treated the question of estoppel as a matter of federal law under the Federal Arbitration Act.  206 F.3d at 417.  The United States Supreme Court has rejected that analysis, and held that state law determines whether a non-signatory may be bound by an arbitration agreement.  See Arthur Anderson LLP v. Carlisle, 556 U.S. 624, 631-32 (2009).  Castle Harlan makes no effort to show that its theories of estoppel are in any respect consistent with New York law.

14

at 418), but the contrast to the Complaint in this case - which does nothing of the sort -- could not be clearer.

Indeed, a number of courts have distinguished <u>International Paper</u> on grounds directly applicable here. For example, in <u>Haskins</u> v. <u>First Am. Title Ins. Co</u>., the Court held that <u>International Paper</u> was inapplicable, and estoppel had not been shown, because (as here) the non-signatory did not assert that the agreement containing the arbitration clause had been breached. Civ. No. 10-5044 (RMB/JS), 2012 WL 1599998, at *7, *11-12 (D.N.J. May 4, 2012). In <u>Noble Drilling Servs. Inc</u>. v. <u>Certex USA, Inc</u>., the Fifth Circuit, distinguishing <u>International Paper</u>, found no estoppel where, as here, the plaintiff did not seek to enforce any specific term of the agreement containing the arbitration clause. 620 F.3d 469, 474 n.6 (5th Cir. 2010); <u>see also</u> <u>Ellen</u> v. <u>A.C. Schultes of Md., Inc</u>., 615 S.E.2d 729, 732-33 (N.C. Ct. App. 2005) (holding that although a contract containing an arbitration clause "provide[d] part of the factual foundation" for the claims at issue, estoppel was not shown where the plaintiffs did not assert any rights arising from the contract or seek to enforce its terms).

<u>Life Technologies Corp</u>. v. <u>AB Sciex Pte. Ltd</u>., 803 F.Supp. 2d 270 (S.D.N.Y. 2011), upon which Castle Harlan relies extensively, is plainly inapplicable. In <u>Life Technologies</u>, a non-signatory to a Purchase Agreement obtained licenses to use trademarks only because the Purchase Agreement specifically required that the trademarks be licensed to the non-signatory. 803 F. Supp. 2d at 276-77. The Court held that when the non-signatory then sued to enforce the terms of its license, it claimed a "direct benefit" under the Purchase Agreement that gave rise to the party's entitlement to licenses in the first place. <u>Id</u>. at 276-79. In contrast, here Norcast has claimed no rights under the Confidentiality Agreement, directly or otherwise, and Norcast's right

not to be deceived in connection with the sale of NWS cannot reasonably be described as derivative of the Confidentiality Agreement.

Moreover, while the nature of Castle Harlan's confidentiality obligations to third party NWS are probative of the separate fact of Castle Harlan's misleading statements to Norcast, the falsity of such statements will ultimately rise or fall on the basis of the facts adduced in discovery.  Thus, Norcast's claim does not depend on, and is not derivative of, any obligations under the Confidentiality Agreement.  See Thomson-CSF, 64 F.3d at 779-80 (holding that benefits are indirect and estoppel is not shown where party predicated antitrust claims on exclusivity agreement, but did not seek to enforce provisions of such agreement).  Accordingly, Castle Harlan cannot show that Norcast has claimed a direct legal benefit under the Confidentiality Agreement, and the doctrine of estoppel provides no basis for compelling Norcast to arbitrate its claims.

**E.     Norcast is Entitled to an Award of Costs and Attorney's Fees for Wrongful Removal of this Action**

Pursuant to 28 U.S.C. § 1447(c), an order remanding a case to state court "may require payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal."  Such an award is appropriate when the removing party lacked an objectively reasonable basis for seeking removal. Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).  No showing of bad faith is required.  Arabesque v. Capacity LLC, No. 07Civ.2042 (TPG), 2008 WL 681459, at *2 (S.D.N.Y. Mar. 10, 2008) (citing Morgan Guar. Trust Co. v. Republic of Palau, 971 F.2d 917, 923 (2d Cir. 1992)).  Removal was objectively unreasonable here because Norcast was never a party to the Confidentiality Agreement, the Exclusivity Agreement clearly imposes no arbitration obligation on Norcast, and the argument that Norcast is estopped from denying the arbitrability of this dispute is completely untenable under controlling

16

precedent, for the reasons stated above.  Second Circuit courts have held that when determining whether to award fees for wrongful removal, courts should "focus[] strictly on the mere absence of subject matter jurisdiction."  G & H Partners AG v. Wextrust Capital, LLC, No. 07 Civ. 9803(DLC), 2008 WL 65102, at *2 (S.D.N.Y. Jan. 4, 2008) (quoting Morgan Guar. Trust Co., 971 F.2d at 923)); see also Ritacco v. Whole Life, Inc., Civil Action No. 3:09-cv-792 (VLB), 2012 WL 3021529, at *3 (D. Conn. July 29, 2010) (holding that attorneys' fees for wrongful removal were appropriate where "prior case law [was] on point and clearly establishe[d]" that there was no basis for removal and "[t]he cases cited by the Defendant [were] distinguishable"). Accordingly, Norcast should be awarded its reasonable fees and costs incurred in seeking remand of this action.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that its Motion to Remand be granted, that Castle Harlan's Motion to Dismiss be denied, and that Plaintiff be awarded its costs and reasonable attorney's fees for wrongful removal, pursuant to 28 U.S.C. § 1447(c).

17

Dated:      New York, New York
              August 6, 2012

CHADBOURNE & PARKE LLP


By _____ /s/ *Scott S. Balber* _____
           Scott S. Balber
         A Member of the Firm
 30 Rockefeller Plaza
 New York, New York 10112
 Tel. (212) 408-5100
 Fax (212) 541-5369
 sbalber@chadbourne.com
 Attorneys for Plaintiff

Of Counsel:

Jonathan C. Cross
CHADBOURNE & PARKE LLP

18