UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

NORCAST S.AR.L.,

         Plaintiff,    Case No. 12 Civ. 4973 (PAC)

    -against-

CASTLE HARLAN, INC.

         Defendant.

---

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS AND IN FURTHER SUPPORT OF
<u>PLAINTIFF'S CROSS-MOTION TO REMAND</u>**

                      CHADBOURNE & PARKE LLP
                      Attorneys for Plaintiff
                      30 Rockefeller Plaza
                      New York, NY 10112
                      (212) 408-5100

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................3

I.    THERE IS NO BASIS TO REQUIRE NORCAST TO ARBITRATE
ITS CLAIMS AGAINST CASTLE HARLAN........................................................................3

    A.    The Exclusivity Letter Does Not Incorporate Any Arbitration
Clause Because It Neither Contains Nor References One ............................3

    B.    The Terms of the Exclusivity Letter Do Not Incorporate the
Confidentiality Agreement's Arbitration Provision As a Matter of Law ....5

    C.    The Doctrine of Estoppel Provides No Basis for
Arbitrability of This Dispute.........................................................................7

CONCLUSION................................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Aerotech World Trade Ltd. v. Excalibur Sys., Inc.,
 654 N.Y.S.2d 386 (2d Dep't 1997)..................................................................................6, 7

Borsack v. Chalk & Vermilion Fine Arts, Ltd.,
 974 F. Supp. 293 (S.D.N.Y. 1997)..........................................................................................7

Ellen v. A.C. Schultes of Md., Inc.,
 615 S.E.2d 729 (N.C. Ct. App. 2005) ..............................................................................9, 10

Fiveco, Inc. v. Haber,
 863 N.Y.S.2d 391 (N.Y. 2008) ...............................................................................................5

Fresh Express, Inc. v. Sardilli Produce & Dairy Co.,
 No. 3:09cv1420 (SRU), 2010 WL 3724543 (D. Conn. Sept. 15, 2010)..................................9

General Ry. Signal Corp. v. Comstock & Co.,
 678 N.Y.S.2d 208 (4th Dep't 1998).....................................................................................5, 6

Haskins v. First Am. Title Ins. Co.,
 Civ. No. 10-5044 (RMB/JS), 2012 WL 1599998 (D.N.J. May 4, 2012).................................9

Indus. Window Corp. v. Fed. Ins. Co.,
 609 F. Supp. 2d 329 (S.D.N.Y. 2009).....................................................................................6

International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,
 206 F.3d 411 (4th Cir. 2000) ..........................................................................................9, 10

Limonium Maritime S.A. v. Mizushima Marinera, S.A.,
 No. 96 CIV. 1888 DC, 1999 WL 46721 (S.D.N.Y. Feb. 1, 1999) ...........................................6

Noble Drilling Servs., Inc. v. Certex USA, Inc.,
 620 F.3d 469 (5th Cir. 2010) ................................................................................................10

Oppenheimer & Co. Inc. v. Deutsche Bank AG,
 No. 09 Civ. 8154(LAP), 2010 WL 743915 (S.D.N.Y. Mar., 2, 2010) ....................................8

Petitions of Laitasalo,
 196 B.R. 913 (Bankr. S.D.N.Y. 1996).....................................................................................8

Phoenix Cos., Inc. v. Abrahamsen,
 No. 05 Civ. 4894(WHP), 2006 WL 2847812 (S.D.N.Y. Sept. 28, 2006) ...............................8

Providence Inv. Mgmt. Co. v. Steel,
 No. 0113142/2007, 2008 WL 279471 (N.Y. Co. Jan. 14, 2008) ............................................. 8

Thomson-CSF, S.A. v. Am. Arbitration Assoc.,
 64 F.3d 773 (2d Cir. 1995) .................................................................................................. 7, 8

Vander v. Epana Networks, Inc.,
 No. 09 Civ. 4526(LMM), 2009 WL 2365236 (S.D.N.Y. Aug. 3, 2009) .................................. 8

**STATUTES**

28 U.S.C. § 1447(c) ............................................................................................................... 10

## PRELIMINARY STATEMENT

Federal jurisdiction is lacking over this case, and it should be remanded to New York state court, for the simple reason that the Plaintiff, Norcast S.àr.L. ("Norcast") has never agreed to arbitrate any disputes whatsoever -- let alone the ones set forth in the Complaint -- with Castle Harlan, Inc. ("Castle Harlan"). Lacking the critical ingredient in opposing Plaintiff's Motion to Remand and in making its Motion to Dismiss -- an agreement to arbitrate disputes with the Plaintiff -- Castle Harlan builds its argument on the flimsy foundation of an agreement by Norcast to keep the terms of a two-page Exclusivity Letter, dated June 1, 2011, between it and Norcast (the "Exclusivity Letter") confidential. But Norcast never agreed to arbitrate any dispute concerning the disclosure of the Exclusivity Letter. Indeed, as Castle Harlan effectively concedes, Norcast nowhere alleges that Castle Harlan disclosed the Exclusivity Letter in violation of its terms, and the confidentiality of the Exclusivity Letter has nothing to do with the claims in this case. Castle Harlan's Motion to Dismiss should be denied, and Norcast's Motion to Remand should be granted, for two basic reasons.

*First*, Castle Harlan cannot show that the arbitration provisions of a March 15, 2011 Confidentiality Agreement between Castle Harlan and a non-party to this lawsuit -- Norcast Wear Solutions, Inc. ("NWS") (the "Confidentiality Agreement") -- were "incorporated by reference" such that they bind Norcast. New York law, which governs the issue, provides that an arbitration clause found in one contract binds the parties to a separate contract only if the separate contract "clear[ly], explicit[ly] and unequivocal[ly]" incorporates the arbitration clause. The Exclusivity Letter contains no arbitration clause, pointedly does not incorporate the arbitration clause in the Confidentiality Agreement, and imposes on Norcast only an extraordinarily narrow obligation defined by reference to a specific provision of the Confidentiality Agreement -- the obligation to keep the two-page Exclusivity Letter itself

confidential.  But (as Castle Harlan does not deny) the confidential status of the Exclusivity Letter is irrelevant to the claims asserted in this case, claims which Norcast never agreed, "clearly, explicitly, and unequivocally," or in any other respect, to arbitrate.

*Second*, Norcast is in no way estopped from denying that this dispute is arbitrable. Applicable precedent provides that Norcast may be compelled to arbitrate through the doctrine of estoppel only where Norcast has claimed a "direct benefit" from an agreement to arbitrate -- by bringing a claim for breach of such an agreement, or by exercising a legal right granted by such an agreement.  Norcast has done neither of those things.  Instead, it has only observed that the nature of Castle Harlan's duties under the Confidentiality Agreement with nonparty NWS tends to show that Castle Harlan's separate statements to Norcast were knowingly false.  Norcast asserts that Castle Harlan *abided by* the Confidentiality Agreement -- and deceived Norcast.  The cases are in accord that using obligations owed by a defendant to a third party under a contract as a source of background facts supporting a litigant's tort claims is insufficient to render such claims arbitrable.

Castle Harlan's contentions rely on distortions and misrepresentations of the terms of the relevant contractual agreements, as well as misapplications of the governing legal standards.  As such, Norcast's Motion to Remand should be granted, and Castle Harlan's Motion to Dismiss should be denied.

## ARGUMENT

### I.

### THERE IS NO BASIS TO REQUIRE NORCAST TO ARBITRATE ITS CLAIMS AGAINST CASTLE HARLAN

**A.     The Exclusivity Letter Does Not Incorporate Any Arbitration Clause Because It Neither Contains Nor References One**

Forced to recognize that Norcast is not a party to the Confidentiality Agreement (Castle Harlan Reply Br., at 3), Castle Harlan grasps at straws, contending that an Exclusivity Letter signed by Norcast somehow obligates Norcast to arbitrate any dispute "relating" to the Confidentiality Agreement.  Castle Harlan Reply Br., at 3-7.  Castle Harlan's position is premised on a bald misreading of the terms of the Exclusivity Letter, which will not bear the weight Castle Harlan attempts to make it carry.

The Exclusivity Letter states that:

> The parties acknowledge and agree that the execution and delivery of this exclusivity letter and its contents constitute "Confidential Information" for purposes of *the confidentiality agreement (the "Confidentiality Agreement") dated March 15, 2011 between Castle Harlan and [NWS]* and may only be disclosed in the circumstances set forth in the Confidentiality Agreement; provided that *[NWS] and Castle Harlan hereby agree* that the Confidentiality Agreement is hereby amended by deleting the definition of term "Representative" and replacing it with the following . . .

D.E. # 11 Ex. B ("Exclusivity Letter"), at 2 (emphasis added).

In at least three express ways, the Exclusivity Letter pointedly and carefully avoids making Norcast a party to the Confidentiality Agreement, or subjecting Norcast to any obligation to arbitrate contained therein:

- *First*, the Exclusivity Letter expressly states that the Confidentiality Agreement is, and remains, an "agreement . . . between Castle Harlan and [NWS]," to which Norcast has not become a party.  Id.

- *Second*, the Exclusivity Letter expressly provides that the Confidentiality Agreement is amended only by "[NWS] and Castle Harlan," not by Norcast or any other entity.  Id.  Of

3

course, only "[NWS] and Castle Harlan" amended the Confidentiality Agreement because they were and remained the only parties to it.  Thus, Castle Harlan's suggestion that Norcast was involved in amending the Confidentiality Agreement (Castle Harlan Reply Br., at 6) flies in the face of the text of the Exclusivity Letter itself.

- *Finally*, the Exclusivity Letter makes no reference to the arbitration clause contained in the Confidentiality Agreement, and contains no arbitration clause of its own.

The thin reed on which Castle Harlan's entire case for arbitrability rests is the Exclusivity Letter's statement that "the execution and delivery of this exclusivity letter and its contents constitute 'Confidential Information' for the purposes of the [Confidentiality Agreement] between Castle Harlan and the Company and may only be disclosed in the circumstances set forth in the Confidentiality Agreement."  Exclusivity Letter, at 2.  But this definitional provision, far from making Norcast a party to the Confidentiality Agreement or generally subjecting Norcast to its terms, imposes upon Norcast only the narrowest and most limited of obligations: to refrain from disclosing the two-page Exclusivity Letter itself, except under "the circumstances set forth in the Confidentiality Agreement."  Id.  The sole contractual obligation entered into by Norcast bearing any relationship at all to the Confidentiality Agreement is the obligation not to disclose two sheets of paper except under certain circumstances.  A breach of this obligation would, in any event, constitute a breach of the Exclusivity Letter, not the Confidentiality Agreement, under which Norcast had and has no rights.

This discrete and limited obligation cannot form the basis for an obligation to arbitrate the claims in this case, which have nothing whatsoever to do with the confidential status of the Exclusivity Letter.  Indeed, Castle Harlan, in its Notice of Removal and thirty-five pages of briefing on the motions before the Court, offers not the slightest suggestion that Norcast's claims arise from or relate to any party's obligations not to disclose the Exclusivity Letter.

B.  **The Terms of the Exclusivity Letter Do Not Incorporate the Confidentiality Agreement's Arbitration Provision As a Matter of Law**

In its efforts to turn the narrow obligation not to disclose the Exclusivity Letter into a source of a broad obligation to arbitrate unrelated disputes, Castle Harlan stretches applicable precedent well past its recognized boundaries. New York courts have never found that an agreement such as the Exclusivity Letter -- containing a narrow reference to an agreement between other parties containing an arbitration clause -- creates an obligation to arbitrate disputes.

As Castle Harlan does not and cannot deny, under New York law, which governs the question of whether an agreement to arbitrate is incorporated by reference into a subsequent contract (see Norcast Br., at 10-11), "[a]n alternate dispute resolution agreement, like an arbitration agreement, 'must be clear, explicit and unequivocal…and must not depend upon implication or subtlety.'" General Ry. Signal Corp. v. Comstock & Co., 678 N.Y.S.2d 208, 209 (4th Dep't 1998); see also Fiveco, Inc. v. Haber, 863 N.Y.S.2d 391, 393 (N.Y. 2008) ("[I]t is well settled that [a] party to an agreement may not be compelled to arbitrate…unless the evidence establishes the parties' clear, explicit and unequivocal agreement to arbitrate....") (internal citations and quotations omitted). New York courts have routinely rejected a finding of incorporation where the contract in question defines certain limited obligations by reference to a separate contract containing an arbitration clause, but does not incorporate the terms of that contract *in toto* or expressly incorporate its arbitration clause. See Norcast Br., at 11-13.

For example, in General Ry. Signal, a subcontract recited "plaintiff's assumption of certain obligations that 'flow down' from the prime contract," which contained an arbitration clause but which the plaintiff never signed. 678 N.Y.S.2d at 209. The court found that these express references to rights and obligations defined by the contract containing the arbitration

5

clause were "equivocal and ambiguous regarding a similar assumption of the prime contract's alternative dispute provisions," failing to meet the standard for incorporation by reference under New York law.  Id.; see also Indus. Window Corp. v. Fed. Ins. Co., 609 F. Supp. 2d 329, 337 (S.D.N.Y. 2009) (where subcontract specified that subcontractor was "bound . . . by all of the terms and provisions of the" contract containing the arbitration clause, but did not "contain any 'clear and express intent' to submit any disputes" to arbitration, New York law precluded a finding of arbitrability).[1]

Faced with these controlling principles of New York law, Castle Harlan relies on cases bearing no resemblance to the one before the Court.  For example, Limonium Maritime S.A. v. Mizushima Marinera, S.A. involved a "joint[] and several[]" guarantee of each and every provision of a contract containing an arbitration clause, and the guarantee stated by its terms that the guarantor would act as if it was a "primory [sic] obligor" under the agreement containing the arbitration clause.  See No. 96 CIV. 1888 DC, 1999 WL 46721, at *1 (S.D.N.Y. Feb. 1, 1999). Norcast in no way "jointly and severally" guaranteed NWS's obligations under the Confidentiality Agreement, and never agreed that it was a primary obligor thereunder.  Aerotech World Trade Ltd. v. Excalibur Sys., Inc., 654 N.Y.S.2d 386 (2d Dep't 1997), upon which Castle Harlan relies (Castle Harlan Reply Br., at 5-6), also serves as a compelling example of why this

---

[1] Castle Harlan's response to the "string" (Castle Harlan Reply Br., at 6 n.8) of cases embracing these principles consists of a non-sequitur:  that they are "construction industry cases."  Id.  Yet, Castle Harlan offers no reasoning, let alone authority, for the notion that the New York contract law rules for incorporating an arbitration clause are uniquely different in the "construction industry" as opposed to any other industry.  Such a distinction apparently has never been articulated by New York courts, which is why Castle Harlan cites to no authority in support of it.

dispute is not arbitrable.  In Aerotech, a Management and Marketing Agreement defined certain limited rights by reference to a Sales Agreement containing an arbitration clause, but did not expressly incorporate that clause.  Id. at 387.  Just as here, the agreement containing no arbitration clause imposed only certain limited duties defined by reference to an agreement containing an arbitration clause, and a New York court found that the arbitration clause was not incorporated.[2]  Id. at 387-88.

C. **The Doctrine of Estoppel Provides No Basis for Arbitrability of This Dispute**

Castle Harlan's "estoppel" theories fail because Norcast has neither sought to exercise rights under the Confidentiality Agreement, nor alleged that the Confidentiality Agreement was breached in any respect.  Because Castle Harlan cannot meet the established Second Circuit estoppel standard, Castle Harlan has fabricated a new rule, of its own making:  that estoppel should be found when a party "maintains that it had some kind of entitlement or expectation deriving from" an agreement containing an arbitration clause.  Castle Harlan Reply Br., at 7-8.  Yet, the Second Circuit has never held that merely "maintaining" an "expectation" is sufficient to find estoppel.  Instead, the Second Circuit has held that a party may be compelled to arbitrate on an estoppel theory only if a party has derived a "direct," rather than an indirect, benefit from the agreement containing an arbitration clause.  See Thomson-CSF, S.A. v. Am. Arbitration Assoc., 64 F.3d 773, 779 (2d Cir. 1995) (suggesting that a "direct benefit" would consist of

---

[2] Borsack v. Chalk & Vermilion Fine Arts, Ltd., 974 F.Supp. 293, 299 (S.D.N.Y. 1997) likewise fails to support Castle Harlan's novel arguments:  in Borsack, the parties to the original contract agreed to amend it, and the amendment memorialized a verbal agreement with a non-signatory individual, who was expressly identified as entitled to receive certain "artist proofs."  974 F.Supp. at 296.  Unsurprisingly, when the individual sued to vindicate his rights under the agreement containing the arbitration clause, the court held the claim was arbitrable.

7

"seeking to purchase equipment [under the contract containing the arbitration clause]…or enforcing the exclusivity provisions" of that contract).

"Direct benefit" has been found under the Thomson-CSF standard in two circumstances: where a party has exercised a legal right granted by a contract containing the arbitration clause, and where a party has sought to enforce the terms of such a contract.  See, e.g., Vander v. Epana Networks, Inc., No. 09 Civ. 4526(LMM), 2009 WL 2365236, at *3 (S.D.N.Y. Aug. 3, 2009) (benefits are direct where plaintiff sought severance benefits pursuant to contract); Petitions of Laitasalo, 196 B.R. 913, 923-24 (Bankr. S.D.N.Y. 1996) (benefits are direct where non-signatory participated in an arbitration proceeding pursuant to arbitration agreement); compare Oppenheimer & Co. Inc. v. Deutsche Bank AG, No. 09 Civ. 8154(LAP), 2010 WL 743915, at *3 (S.D.N.Y. Mar. 2, 2010) (benefits are indirect where non-signatory neither operated as a FINRA member nor "sought to enforce any particular provisions" of membership); Phoenix Cos., Inc. v. Abrahamsen, No. 05 Civ. 4894(WHP), 2006 WL 2847812, at *7 (S.D.N.Y. Sept. 28, 2006) (benefits are indirect where non-signatory derived benefits from relationships provided by contracts but had no involvement in the "execution or performance" of contracts); Providence Inv. Mgmt. Co. v. Steel, No. 0113142/2007, 2008 WL 279471, at *8-9 (N.Y. Co. Jan. 14, 2008) (benefits are indirect where non-signatory derived benefit from contractual relationship between the parties but not from "exploitation of the Agreement itself").

Here, Norcast has neither exercised legal rights granted by the Confidentiality Agreement (indeed, Norcast, as a nonparty, has no such rights), nor attempted to enforce the Confidentiality Agreement's terms.  Norcast has merely observed that Castle Harlan's statements to Norcast are inconsistent with the nature of Castle Harlan's obligations to a third party under the Confidentiality Agreement.  The Complaint alleges that because Castle Harlan provided

confidential information to Bradken, as its source of external financing, in compliance with its obligations under the Confidentiality Agreement, Castle Harlan lied to Norcast when it said it had no external financing for the transaction.  See D.E. #1 Ex. A ("Compl.") ¶ 33.  Castle Harlan has not identified any authority finding estoppel in such circumstances.

In International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000), for example, a non-signatory to the contract containing an arbitration clause alleged failure to honor warranties in that contract, asserted that it had direct rights pursuant to the contract, and brought other claims which "hinge[d] on its asserted rights under the . . . contract."[3]  Castle Harlan's continued reliance on International Paper is mystifying, because Norcast has not asserted that it had *any* rights under the Confidentiality Agreement, nor claimed a breach thereof.  And as Norcast demonstrated at length in its opening brief, subsequent cases applying International Paper have consistently refused to find estoppel where, as here, a contract with a third party containing an arbitration clause merely "provides part of the factual foundation" for a party's complaint.[4]  Ellen v. A.C. Schultes of Md., Inc., 615 S.E.2d 729, 732-33 (N.C. Ct. App. 2005);  see also Norcast Br., at 14-15.

---

[3] As the Fourth Circuit noted, the non-signatory plaintiff, International Paper Co. sought "damages, revocation, and rejection 'in accordance with' that contract . . . International Paper's entire case hinges on its asserted rights under the Wood–Schwabedissen contract."  International Paper Co., 206 F.3d at 418.  The contrast with the case at hand could not be more stark.

[4] Castle Harlan's efforts to distinguish the authority declining to apply International Paper on facts comparable to the ones in this case are unavailing.  For example, Castle Harlan ignores that in Fresh Express, the "direct benefit" consisted of a party's receipt of "payments . . . based on the [contract containing the arbitration clause]'s terms" -- an obvious "direct benefit" wholly absent here.  Fresh Express, Inc. v. Sardilli Produce & Dairy Co., No. 3:09cv1420 (SRU), 2010 WL 3724543, at *3 (D. Conn. Sept. 15, 2010).  Likewise, in Haskins, just as here, the Complaint referred to certain third-party contractual duties as part of the background for Plaintiff's claims, but nowhere asserted that the contract containing the arbitration clause had been breached.  Haskins v. First Am. Title Ins. Co., Civ. No. 10-5044 (RMB/JS), 2012 WL 1599998, at *7, *11-12 (D.N.J. May 4, 2012).  And in Ellen, the plaintiff brought tortious interference with contract claims expressly predicated on a

(Cont'd on following page)

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that its Motion to Remand be granted, that Castle Harlan's Motion to Dismiss be denied, and that Plaintiff be awarded its costs and reasonable attorney's fees for wrongful removal, pursuant to 28 U.S.C. § 1447(c).

Dated:    New York, New York
          August 27, 2012

                                            CHADBOURNE & PARKE LLP

                                            By      /s/ *Scott S. Balber*
                                                   Scott S. Balber
                                                A Member of the Firm
                                         30 Rockefeller Plaza
                                         New York, New York 10112
                                         Tel. (212) 408-5100
                                         Fax (212) 541-5369
                                         sbalber@chadbourne.com
                                         Attorneys for Plaintiff

Of Counsel:

Jonathan C. Cross
CHADBOURNE & PARKE LLP

---

(Cont'd from preceding page)

    non-party's rights under a contract containing an arbitration clause -- but, following <u>International Paper</u>, the court held that although allegations regarding contracts containing arbitration clauses "provid[ed] part of the factual foundation" for plaintiff's claims, this circumstance was insufficient to estop plaintiff from denying an obligation to arbitrate.  <u>Ellen</u> v. <u>A.C. Schultes of Md., Inc</u>., 615 S.E.2d 729, 732-33 (N.C. Ct. App. 2005); <u>see also</u> <u>Noble Drilling Servs., Inc</u>. v. <u>Certex USA, Inc</u>., 620 F.3d 469, 474 n.6 (5th Cir. 2010) (distinguishing <u>International Paper</u> and finding no estoppel where, as here, the plaintiff did not seek to enforce any specific term of the agreement containing the arbitration clause).

10